AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

United States of America,

v.

Arnoldo Cruz,

Defendant.

Case No. 2:22-mj-00073 -duty

**LODGED**
CLERK, U.S. DISTRICT COURT
1/7/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: _____jb_____ DEPUTY

**FILED**
CLERK, U.S. DISTRICT COURT
January 7, 2022
CENTRAL DISTRICT OF CALIFORNIA
BY: _____CD_____ DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of July 2, 2021, in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2250(a) | Failure to register under the Sex Offender Registration and Notification Act ("SORNA") |

This criminal complaint is based on these facts:

**Please see attached affidavit.**

☒ Continued on the attached sheet.

/S/ Loekman Sutanto
*Complainant's signature*

Loekman Sutanto, Deputy United States Marshal
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: January 7, 2022

*Judge's signature*

City and state: Los Angeles, California       ALKA SAGAR
*Printed name and title*

Arrest Warrant

**AFFIDAVIT**

I, Loekman Sutanto, being duly sworn, declare and state as follows:

**PURPOSE OF AFFIDAVIT**

1. This affidavit is made in support of a criminal complaint against and warrant to arrest **ARNOLDO CRUZ** ("**CRUZ**") for a violation of 18 U.S.C. § 2250(a) (failure to register under the Sex Offender Registration and Notification Act ("SORNA")).

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.

3. This affidavit is intended to show only that there is probable cause for the requested complaint and arrest warrant, and does not purport to set forth all of my knowledge of or investigation into this matter.

4. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only. Further, all dates and amounts are approximations, and the words "on or about" and "approximately" are omitted for clarity.

**BACKGROUND OF AFFIANT**

5. I am a Deputy United States Marshal ("DUSM") with the United States Marshal Service ("USMS") and have been so employed since June 2003. I am currently assigned to the Sex Offenders Investigative Branch in the Los Angeles Office, Central District

1

of California. During the 25 weeks of training I completed at the Federal Law Enforcement Training Center in Glynco, Georgia, I received specific training in the areas of fugitive apprehension, interviews, interrogations, affidavit writing, and legal matters, to include searches and seizures.

6. Prior to becoming a DUSM, I was employed as a Correctional Officer ("CO") with the Federal Bureau of Prisons ("BOP") from May 2000 to January 2003, and as a Detention Enforcement Officer ("DEO") for the Immigration & Naturalization Service ("INS") from February 2003 to August 2003. As a BOP CO and INS DEO, I attended a law enforcement academy for a total of 13 weeks and received extensive training in general correctional management.

7. During my employment as a DUSM, I have conducted and participated in numerous investigations of criminal activity and fugitive apprehension. My responsibilities include investigating individuals who are convicted sex offenders and who have failed to register as required under federal, and I have conducted numerous investigations of individuals who are in violation of sex offender registration statutes.

## SUMMARY OF PROBABLE CAUSE

8. On February 2, 2003, **CRUZ** was convicted in Colorado state court of "Sex Assault-Overcome Victim's Will," in violation of Colorado Statute § 18-3-402(1)(a) after committing a forcible rape. Following his conviction, **CRUZ** was sentenced to six years in prison. As a result of this conviction, **CRUZ** was required to register as a sex offender under state and federal

law, including SORNA. On October 30, 2006, **CRUZ** was paroled from the prison sentence. At the time of parole, the Colorado State Board of Parole ordered **CRUZ** to register as a sex offender upon release from custody. Thereafter, **CRUZ** was convicted in Colorado for failing to register as a sex offender.

9.  On February 23, 2021, **CRUZ** submitted a Colorado Sex Offender Registration Form to deregister himself as a sex offender in Colorado. Upon deregistration, **CRUZ** provided his new address in California as a particular residence in El Monte, California (the "El Monte residence"). The deregistration form instructed **CRUZ** that he was legally required to register as a sex offender in California. **CRUZ** signed the form. By March 2021, **CRUZ** had moved to the El Monte residence in California.

10. On July 2, 2021, **CRUZ** was arrested in Venice, California, after he sexually assaulted and harassed three different women earlier the same night. As of December 2021, **CRUZ** had not registered as a sex offender in California.

### STATEMENT OF PROBABLE CAUSE

11. Based on my review of law enforcement reports and records, court records, criminal history records, sexual registration documents, conversations with other law enforcement personnel, and my own knowledge of this case, I know the following:

    **A.**    **Officers arrest CRUZ following his sexual assault and harassment of three women in Venice, California**

12. On July 2, 2021, **CRUZ** was arrested after sexually assaulting and harassing three different women in Venice,

3

California. The Los Angeles Police Department ("LAPD") reports that I reviewed reflect the following events.

13. On July 2, 2021, at around 12:30 a.m. in Venice, California, Victim 1 was asleep with her window open when she felt someone's hand reach underneath her shirt and fondle her breasts. Victim 1 opened her eyes, saw **CRUZ** reaching through her window, jumped out of bed, and screamed. When Victim 1 screamed, **CRUZ** exposed his erect penis and began to masturbate directly outside the window, yelled something to the effect of "I'm going to fuck you," and attempted to get into the bedroom through a second window. Victim 1 shouted again that she was calling the police, prompting **CRUZ** to run from the window.

14. On the same night, several hours later, Victim 2 walked her boyfriend to his car, which was parked outside her residence in Venice. After her boyfriend got into his car and drove away, Victim 2 heard **CRUZ** shout at her from across the street, then saw **CRUZ** run in her direction. Victim 2 escaped into her residence, and **CRUZ** began pounding on Victim 2's window. **CRUZ** then pulled down his pants and began to masturbate. Victim 2 called her boyfriend, who returned to the street with his pit bull, causing **CRUZ** to run away.

15. LAPD officers responded to Venice and began collecting nearby Ring and surveillance footage, which yielded clear images of **CRUZ** masturbating in public.

16. Thereafter (on the same night), while driving on Dell Avenue at Court C in the Venice Canals, LAPD Detective Hess and Officer Lee (who were together in an unmarked police car) saw

4

**CRUZ**, who they recognized from the surveillance footage, wearing a blue button-down shirt with a pink flamingo pattern and white long pants. When the officers stopped and got out of their car, **CRUZ** ran from the officers, though he surrendered approximately 140 feet from the initial encounter.

17. During the arrest, a man walked out of his residence and told the officer that **CRUZ** had sexually harassed his wife, Victim 3, moments earlier. Specifically, Victim 3 was walking her dog at 7:20 a.m. when **CRUZ** approached and asked her about her dog, then said "I got nine inches for you," which Victim 3 understood to be a sexual proposition.

18. Victim 1 and Victim 2 were then transported to the scene of arrest, where they each individually identified **CRUZ** as the person who committed the sexual crimes on them.

19. Meanwhile, two other detectives found a 2007 Nissan Altima bearing Vehicle Identification Number 1N4AL21E07N471375 (the "Nissan") near Victim 1's residence that was left running.

20. Inside the Nissan, detectives found a bill of sale dated June 28, 2021 showing that **ARNOLDO CRUZ** of the El Monte residence owned the Nissan.

21. Following **CRUZ**'s arrest, LAPD Detective Hess and Officer Lee met with **CRUZ** for a recorded interview, and read **CRUZ** Miranda warnings verbatim from an LAPD-issued card.

22. **CRUZ** waived his Miranda rights and told the officers that he had recently been released from Colorado prison after serving a 23-year sentence, and that when he was released, he contacted his wife, who told him to move in with his mother in

5

Los Angeles, where he grew up.[1] According to **CRUZ**, he then moved in with his mother in El Monte, California (which is the town where the El Monte residence is located).

23.  Regarding the sexual assaults, **CRUZ** said he drove to Venice that night because he wanted to see the ocean. **CRUZ** also admitted that he engaged with a number of women, but denied sexually assaulting the women. For example, **CRUZ** said that his proposition to give Victim 3 "nine inches" was a reference to a Nine Inch Nails song, that the videos of him masturbating in fact showed him merely urinating, and that he only went into residents' yards because a "black man" was chasing him.

24.  **CRUZ** also told the officers that he resided at the El Monte residence.

**B.  CRUZ knew that he was required to register as a sex offender in California**

25.  Following **CRUZ**'s arrest in Venice on July 2, 2021, the investigation was referred to the United States Marshals Service to investigate **CRUZ**'s failure to register as a sex offender in California. Based on law enforcement, court, and registration records, I learned the following information.

26.  On February 2, 2003, **CRUZ** was convicted in Colorado state court of "Sex Assault-Overcome Victim's Will," in violation of Colorado Statute § 18-3-402(1)(a). Records show that **CRUZ** raped a woman with whom he was living. One document

---

[1] **CRUZ** reported his address to the officers as the El Monte residence, as reflected on the LAPD Investigative Action-Statement Form that memorialized **CRUZ**'s waiver of his Miranda rights.

obtained from Colorado authorities describes the rape as follows:

> The female victim stated that she and the offender resided together for approximately 7 years. The victim went to drop the offender off at the halfway house he was residing at. The offender tried to hug her and told her "if he can't have her, no one can." The victim pushed the offender away, but he told her he was going to "do it to her and get her pregnant so he could keep her by his side."
>
> The offender forced her down on the seat and pulled her pants down. The offender had intercourse with the victim even while she was screaming and telling him to "please stop." The offender told the victim to stop screaming or else he would hit her. The offender had intercourse with the victim a second time before letting her out of the car.

27. Following his conviction, **CRUZ** was sentenced to six years in prison. As a result of this conviction, **CRUZ** was required to register as a sex offender under state and federal law, including SORNA.

28. On October 30, 2006, when **CRUZ** was paroled from the prison sentence, the Colorado State Board of Parole ("CSBP") ordered **CRUZ** to register as a sex offender upon release from custody. For instance, a CSBP document, dated October 30, 2006, states that **CRUZ** appeared before the CSBP in person and that **CRUZ** was "specifically notified" of his "sex offender registration" requirement.

29. Court records show that less than two years later, in August 2008, **CRUZ** was arrested in Colorado for homicide, and thereafter, pled guilty to first-degree assault with a weapon causing serious bodily injury. Around the same time, **CRUZ** was

convicted of failing to register as a sex offender in Colorado. On April 7, 2010, **CRUZ** was sentenced in Colorado to 10 years in prison for the first-degree assault and three years in prison for failing to register as a sex offender. **CRUZ** was released in 2017.

30. On February 23, 2021, **CRUZ** submitted a Colorado Sex Offender Registration Form (Form 2018 CBI SXO-1) to deregister himself as a sex offender in Colorado. Upon deregistration, **CRUZ** provided the El Monte residence as his new address in California. On Page 7 of the Colorado Form 2018 CBI SXO-1, under "Where to Register," Item 6 states "It is a requirement of the Adam Walsh Act that you register within three business days if you move out of state." **CRUZ** signed the form.

### C. CRUZ failed to register as a sex offender in California

31. On September 28, 2021, the SORNA investigation of **CRUZ** was referred to United States Marshals Service in Los Angeles, California, where the investigation was initially assigned to DUSM Luna, who learned that **CRUZ** had been arrested for the July 2, 2021 sexual assaults in Venice, and was being housed at Pitchess Detention Center in Castaic, California.

32. On October 4, 2021, DUSM Luna conducted a search of the California Sex and Arson Registry and found no record of **CRUZ** registering as a sex offender in California.

33. On October 26, 2021, the California Department of Justice completed a registration requirement assessment for **CRUZ,** and determined that because of **CRUZ**'s Colorado conviction,

**CRUZ** had a lifetime requirement to register as a sex offender in California.

34. On October 29, 2021, LAPD Detective Hopkins informed DUSM Luna that on April 22, 2021, **CRUZ** received a traffic citation (number JJ-76969) in El Centro, California, for driving without a license, in violation of California Vehicle Code § 12951A. During the traffic stop, **CRUZ** provided the El Monte residence as his residential address to the California Highway Patrol officer who issued the citation. At the time of the incident, **CRUZ** was driving a 2008 Jeep with California plate 6DRB812.

35. On November 3, 2021, Los Angeles County Department of Public Social Services ("DPSS") informed DUSM Luna that on March 9, 2021, **CRUZ** applied for welfare benefits, and that on the application, **CRUZ** provided his home address as the El Monte residence. I have obtained DPSS records confirming that, in March 2021, **CRUZ** reported his address to DPSS as the El Monte residence.

36. On November 5, 2021, I searched **CRUZ** in the National Law Enforcement Telecommunications System. The results showed that between November 28, 2007 and February 15, 2021, **CRUZ** had been arrested nine times, convicted once, and had his parole revoked four times, all for failing to register as a sex offender in Colorado.

37. On November 9, 2021, I conducted surveillance at the El Monte residence. While conducting surveillance, I observed a 2017 Nissan Maxima, which was registered to a woman with the

last name **CRUZ**, who I believe to be **CRUZ**'s relative, at the El Monte residence.

38.  On December 16, 2021, I spoke with Detective Polanco of the El Monte Police Department ("EMPD"), who confirmed that **CRUZ** has never registered as a sex offender with EMPD.

## CONCLUSION

39.  For the foregoing reasons, there is probable cause to issue the requested complaint and arrest warrant.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this ___7th___ day of
___January___, 2022.

_____
THE HONORABLE   ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE